IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

---

| RICKIE L. REBER, | ) | **MEMORANDUM DECISION & ORDER** |
| | ) | **DENYING HABEAS PETITION** |
| Petitioner, | ) | |
| | ) | Case No. 2:08-CV-50 TS |
| v. | ) | |
| | ) | District Judge Ted Stewart |
| A. LYNN PAYNE et al., | ) | |
| | ) | |
| Respondents. | ) | |

---

Petitioner, Rickie L. Reber, petitions for habeas corpus relief.[1] The Court denies him.[2]

## BACKGROUND

A jury convicted Petitioner of one count of aiding and assisting in the wanton destruction of wildlife, a third-degree felony under Utah Code § 23-20-4(3)(a), for which he was sentenced to five years in prison. The sentence was stayed conditioned on him paying a fine and restitution. He apparently never served prison time and his probation has since ended. The conviction was overturned by the Utah Court of Appeals.[3] But then, the Utah Supreme Court reversed that decision and reinstated Petitioner's conviction.[4]

---

[1] *See* 28 U.S.C.S. § 2254 (2011).

[2] The Court notes that Petitioner is represented by counsel and therefore not entitled to the liberal construction of his pleadings afforded *pro se* prisoners.

[3] *State v. Reber*, 2005 UT App 485, ¶ 13.

[4] *State v. Reber*, 2007 UT 36, ¶ 27.

Petitioner's petition to this Court attacks the Utah Supreme Court's ruling, arguing that: (1) Petitioner was denied his due-process right to present a defense of reasonable reliance. (2) He was denied due process due to the trial judge's bias. (3) The State improperly exercised jurisdiction over him, an "Indian," hunting in Indian country. (4) The State disregarded the Uintah Band's determination that Petitioner is a tribe member, violating United States Supreme Court precedent reserving to Indian tribes the right to determine their own membership. And, (5) the State improperly took jurisdiction of Petitioner, an Indian born before the Ute Partition Act (UPA)[5] who was not on the termination roll prepared under UPA.

The State answers the petition, arguing that, because neither were properly before the Utah Supreme Court, the first two of these grounds are procedurally defaulted. The State further responds, as to the remaining issues, that Petitioner has not shown, as he must to prevail, that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[6]

---

[5] 25 U.S.C.S. §§ 677-677aa (2011).

[6] 28 *id.* § 2254(d).

**ANALYSIS**

**I. Procedurally Defaulted Issues**

In general, before Petitioner may seek review of a Utah conviction in federal court, he must exhaust all remedies in the Utah courts.[7] This means Petitioner must properly present to the highest available Utah court the federal constitutional issues on which he seeks relief.[8] Here, Petitioner did not properly present his first two issues to the highest court available, the Utah Supreme Court.

The United States Supreme Court has declared that when a petitioner has "'failed to exhaust his state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred' the claims are considered exhausted and procedurally defaulted for purposes of federal habeas relief."[9]

Neither of the first two issues--regarding the reasonable-reliance defense and trial-judge bias--were raised in the petition or cross-petition for writ of certiorari presented to the Utah Supreme Court. And, the supreme court's order granting

---

[7] *See id.* § 2254(b) & (c); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Knapp v. Henderson*, No. 97-1188, 1998 WL 778774, at *2 (10th Cir. Nov. 9, 1998) (unpublished).

[8] *See Picard*, 404 U.S. at 275-76.

[9] *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

the petition and cross-petition did not at all address or invite argument on the first two issues. Further, the supreme court's opinion reversing the court of appeals did not at all address the first two issues.

Finally, if Petitioner had believed he had no cause to bring these two issues to the Utah Supreme Court's attention in his petition for certiorari because of the procedural posture of his success in the Utah Court of Appeals, he was welcome to raise the issues in a later state post-conviction petition, which he did not. Utah's Post-Conviction Remedies Act states, "A person is not eligible for relief under this chapter upon any ground that . . . is barred by the limitation period established in Section 78B-9-107."[10] Thus, while the grounds Petitioner presents could have been brought in a request for state post-conviction relief, the time has run out to do so. These issues are thus procedurally barred from state supreme court consideration.

"This court may not consider issues raised in a habeas petition 'that have been defaulted in state court on an independent and adequate procedural ground[] unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice.'"[11] Petitioner has argued neither cause

---

[10] Utah Code Ann. § 78B-9-107 (2011) (statute of limitations for post-conviction relief).

[11] *Thomas*, 218 F.3d at 1221 (alteration in original) (citation omitted).

4

and prejudice nor a fundamental miscarriage of justice to justify his procedural default.

The Court therefore determines that Petitioner did not properly raise his issues of his reasonable-reliance defense and judicial bias before the Utah Supreme Court. Because under state law those questions no longer qualify to be raised in Utah courts, the Court concludes that they are technically exhausted, barred by state procedural law, and procedurally defaulted in this federal habeas case. Indeed, Petitioner has shown neither cause and prejudice nor a fundamental miscarriage of justice excusing his default.

## II. Remaining Claims

Petitioner asserts that the State violated federal law when it exercised jurisdiction over him, a member of a federally recognized tribe, who was hunting in Indian country; disregarded the Uintah Band's determination that Petitioner is a tribe member (violating United States Supreme Court precedent reserving to Indian tribes the right to determine their own membership); and improperly took jurisdiction of an Indian born before the UPA who was not on the termination roll prepared under UPA.

### A. Standard of Review

The standard of review applicable to federal habeas cases is found in § 2254, under which this habeas petition is filed. It states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[12]

"Subsection (d)(1) governs claims of legal error while subsection (d)(2) governs claims of factual error."[13] Further, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."[14]

The Court's inquiry here begins with whether the supreme court's rejection of Petitioner's claims "was contrary to, or involved an unreasonable application of, clearly established Federal law."[15] The Court is not to determine whether the supreme court's decision was correct or whether this Court may

---

[12] 28 U.S.C.S. § 2254(d) (2011).

[13] *House v Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).

[14] 28 U.S.C.S. § 2254(e)(1) (2011).

[15] *Id.* § 2254(d)(1).

6

have reached a different outcome.[16] "The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited."[17]

Under *Carey v. Musladin*,[18] the first step is determining whether clearly established federal law exists relevant to Petitioner's claims.[19] Only after answering yes to that "threshold question" may the Court go on to "ask whether the state court decision is either contrary to or an unreasonable application of such law."[20]

> [C]learly established [federal] law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.[21]

In deciding whether relevant clearly established federal law exists, this Court is not restricted by the state court's analysis.[22]

---

[16] *See Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

[17] *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).

[18] 549 U.S. 70 (2006).

[19] *House*, 527 F.3d at 1017-18.

[20] *Id.* at 1018.

[21] *Id.* at 1016.

[22] *See Bell v. Cone*, 543 U.S. 447, 455 (2005) ("Federal courts are not free to presume that a state court did not comply with constitutional dictates

7

If this threshold is overcome, this Court may grant habeas relief only when the state court has "unreasonably applied the governing legal principle to the facts of the petitioner's case."[23] This deferential standard does not let a federal habeas court issue a writ merely because it determines on its own that the state decision erroneously applied clearly established federal law.[24] "'Rather that application must also be unreasonable.'"[25]

Finally, "[i]t is, of course, well settled that the fact that constitutional error occurred in the proceedings that led to a state-court conviction may not alone be sufficient reason for concluding that a prisoner is entitled to the remedy of habeas."[26] This Court must "give effect to state convictions to the extent possible under law."[27] Still, "errors that undermine confidence in the fundamental fairness of the state adjudication certainly justify the issuance of the federal writ."[28]

---

on the basis of nothing more than a lack of citation."); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) ("[A] state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'") (citation omitted).

[23] *Walker v. Gibson*, 228 F.3d 1217, 1225 (10th Cir. 2000) (citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).

[24] *See id.*

[25] *Id.* (quoting *Williams*, 529 U.S. at 411).

[26] *Williams*, 529 U.S. at 375.

[27] *Id.* at 386.

[28] *Id.* at 375.

**B. Application of Standard of Review to Claims**

**1. Jurisdiction over "Indian" in Indian Country**

Petitioner urges this Court to overturn the Utah Supreme Court's decision that the State did not violate federal law when it exercised jurisdiction over him--an "Indian"--regarding his hunting activities in Indian country. The fact that the hunting took place in Indian country is undisputed. What Petitioner attacks is the supreme court's conclusion that Petitioner is a non-Indian who perpetrated "a victimless crime within Indian country but not on Indian land," thus allowing the State to take jurisdiction over him.[29]

The Utah Supreme Court's decision observed applicable United States Supreme Court precedent that "'[w]ithin Indian country, state jurisdiction is limited to crimes by non-Indians against non-Indians and victimless crimes by non-Indians.'"[30] Having set forth this standard, the Utah Supreme Court first held that this was a victimless crime.[31] The court rested this conclusion primarily on another relevant United States Supreme Court case, *Montana v. United States*, 450 U.S. 544 (1981).[32]

---

[29] *Reber*, 2007 UT 36, at ¶ 10.

[30] *Id.* at ¶ 9 (quoting *Solem v. Bartlett*, 465 U.S. 463, 465 n.2 (1984) (citation omitted)).

[31] *Id.* at ¶ 19.

[32] *Id.* at ¶¶ 14-15.

9

*Montana* sets forth a jurisdictional distinction between "Indian country" and "Indian lands" or "Indian property owners."[33] A tribe may not regulate hunting and fishing by nonmembers of a tribe on lands over which the tribe does not "'"exercise[] absolute and undisturbed use and occupation."'"[34] Analyzing the facts of this case against *Montana*, the supreme court stated that the "Ute tribe has no regulatory authority to be offended by acts of Defendant[] here because the acts did *not* take place on Indian land over which the tribe claimed, or could claim, regulatory authority over hunting and fishing."[35]

The Utah Supreme Court next held that Petitioner is not an "Indian," as prescribed by federal law.[36] Again, the court drew on appropriate Supreme Court authority to guide its analysis. The court observed that, under *United States v. Rogers*, 45 U.S. 567 (1846), "to claim the status of an Indian, a person must '(1) [have] a significant degree of Indian blood *and* (2) [be] recognized as an Indian by a tribe or society of Indians or by

---

[33] *Montana*, 450 U.S. at 563 n.12.

[34] *Reber,* 2007 UT 36, at ¶ 14 (quoting *Montana*, 450 U.S. at 558-59 (citation omitted).

[35] *Reber,* at ¶ 15 (emphasis in original).

[36] *Id.* at ¶ 20.

the federal government.'"[37]  According to the court, Petitioner met neither requirement.[38]

"[A]pplying the *Rogers* factors," the Utah Supreme Court first noted that it could find "no case in which a court has held that 1/16th Indian blood, as claimed by [Petitioner], qualifies as a 'significant degree of Indian blood.'"[39]  Petitioner also failed "the first element of the *Rogers* test" because "his ancestors lost their legal status as Indians" through "the operation and effects of the Ute Partition Act," under which--just as with Petitioner and his terminated parent--a child of a terminated parent cannot claim membership in a tribe through that parent.[40]

Continuing its assessment of Petitioner's non-Indian status under the second *Rogers* factor, the Utah Supreme Court concluded, "The Uintah Band, in which [Petitioner] claim[s] membership, is not recognized as a tribe by the federal government.  As a consequence, [his] claimed membership in that tribe does not help establish [his] Indian status under federal law."[41]

---

[37] *Id.* at ¶ 21 (alterations and emphasis in original) (citing *State v. Perank*, 858 P.2d 927, 932 (Utah 1992)).

[38] *Id.* at ¶ 21.

[39] *Id.* at ¶ 22 (quoting *Perank*, 858 P.2d at 932-33.

[40] *Id.* at ¶ 23 (citing *United States v. Von Murdock*, 132 F.3d 534, 536 (10th Cir. 1997)).

[41] *Id.* at ¶ 24.

11

Having thus applied relevant United States precedent to the facts of this case, the Utah Supreme Court concluded that the State had jurisdiction over Petitioner because the crime was victimless and he was not an "Indian." Meanwhile, Petitioner has almost entirely relied on *Tenth Circuit* cases to support his arguments.[42] He has not identified, as required by the federal standard of review, "clearly established . . . Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.".[43]

Nor has Petitioner met the federal habeas standard of review's burden by even really attacking the Supreme Court precedent applied by the Utah Supreme Court, as resulting "in a decision that was contrary to, or involv[ing] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[44] He *never even mentions* the Supreme Court cases, *Montana* or *Rogers,* used by the Utah Supreme Court in his petition and supporting memorandum.

Once the State in its answer pointed out that omission, Petitioner finally referred to *Montana* (but still not *Rogers*) in his reply to the State's answer; however, he did so only to decry

---

[42]*See, e.g., Timpanogos Tribe v. Conway*, 286 F.3d 1195 (10th Cir. 2002); *Murdock*, 132 F.3d at 534; *United States v. Felter*, 752 F.2d 1505 (10th Cir. 1985).

[43]*House*, 527 F.3d at 1016.

[44]28 U.S.C.S. § 2254(d)(1) (2011).

12

it as inapplicable. This undercuts Petitioner's ability to overcome the federal habeas standard of review. Petitioner may prevail only if there is Supreme Court precedent clearly on point, *and*, the state supreme court unreasonably applied it. So, when he asserts *Montana* is not on point, he is conceding that it does not qualify as spot-on precedent, and he may not proceed past that standard-of-review threshold. After all, he did not suggest other spot-on precedent exists. In other words, if *Montana* is not clearly on point, it does not matter how the Utah Supreme Court applied it, even if unreasonably. Indeed, the Utah Supreme Court was merely drawing a relevant point from *Montana* that supports one proposition in this case, not making a blanket statement that *Montana* is directly on point in every way and wholesale analyzing this case against *Montana*.

Petitioner has not shown that the Utah Supreme Court identified inappropriate United States Supreme Court precedent to use in its opinion. Nor has he brought to this Court's attention any United States Supreme Court precedent with closely related facts directly on point with this case. Finally, Petitioner has not argued at all that *Rogers* was unreasonably applied, nor argued but weakly that *Montana* was unreasonably applied. Because Petitioner has not met the habeas standard of review in attacking the Utah Supreme Court's decision, this Court rejects

13

Petitioner's argument that the Utah Supreme Court's selection and application of relevant Supreme Court precedent was unreasonable, as to his argument that the State violated federal law when it exercised jurisdiction over him and his hunting activities in Indian country.

### 2. Disregard of Tribe's Rights to Determine Membership

Petitioner argues that the Utah Supreme Court disregarded the Uintah Band's determination that Petitioner is a tribe member, which he says violates Indian tribes' rights to determine their own membership. To the contrary, the Utah Supreme Court acknowledged that it was "not at liberty to decide which individuals are or should be 'recognized as an Indian' by Indian tribes or the federal government. Such recognition is at the discretion of those entities."[45] Still, although only tribes have the authority to decide their membership, in Petitioner's case, the Uintah Band may very well include him in its membership but that does not mean the Uintah Band itself is a federally recognized tribe with its members having the rights of members of a federally recognized tribe. Thus, the Utah Supreme Court essentially may allow that the Uintah Band has the right to designate Petitioner a member, while at the same time realizing that his designation as a member of that Band does not give him the rights of a member of a federally recognized tribe.

---

[45] *Reber,* 2007 UT 36, at ¶ 26.

14

In other words, the court observed that Petitioner asserted his membership in the Uintah Band, but admitted that he is not a member of the Ute Tribe, which is federally recognized.[46] Under formal federal law, it held, "the Uintah Tribe no longer has a separate existence apart from the Ute Tribe. As a result, [Petitioner] do[es] not belong to a federally recognized tribe and [is] not [an] Indian[] under federal law.[47]

In noting this, the Utah Supreme Court merely abided by federal law as determined by the Tenth Circuit in *United States v. Von Murdock*, 132 F.3d 534 (10th Cir. 1997). Petitioner's argument does not support a claim for habeas relief because the Utah Supreme Court was consistent with Tenth Circuit precedent concluding that the Uintah Band (apparently without its officially terminated members) had been absorbed by the Ute Tribe and does not exist separately from it. Further, no United States Supreme Court cases conflict with this decision. The Utah Supreme Court decision on this issue is thus not contrary to and does not involve an unreasonable application of clearly established federal law.

### 3. Jurisdiction over Indians as to UPA Rolls

Finally, Petitioner argues the State of Utah improperly took jurisdiction of him as an Indian born before the UPA who was not

---

[46]*Id.* at ¶ 25.

[47]*Id.*

15

on the termination roll prepared under UPA. The UPA, though, was germane to the Utah Supreme Court's decision only as it supported the standard premise that offspring of terminated ancestors are not Ute Indians.[48]

When the UPA was passed in 1954, its purpose "was to divide and distribute 'the assets of the Ute Tribe of the Uintah and Ouray Reservation in Utah between mixed-blood and full-blood members thereof,' [and] to terminate federal supervision over the mixed-blood members . . . . 25 U.S.C. § 677."[49] In concluding Petitioner was not an Indian, the Utah Supreme Court pointed out that Petitioner's "ancestors, through which [he] claim[ed] Indian blood, were individually listed on the [UPA] final termination roll."[50] The Tenth Circuit has held that offspring of parents listed on the final termination roll are not members of the Ute Indian Tribe.[51] Thus, the Utah Supreme Court held that Petitioner may not assert membership in the tribe through his mother, who was officially terminated from the tribe.[52]

Having not been addressed by the United States Supreme Court, Petitioner's reading of the UPA cannot fairly be said to

---

[48]*Id.* at ¶ 23.

[49]*Von Murdock*, 132 F.3d at 535.

[50]*Reber,* 2007 UT 36, at ¶ 23.

[51]*Von Murdock*, 132 F.3d at 540.

[52]*Reber,* 2007 UT 36, at ¶ 23.

16

represent "clearly established Federal law, as determined by the Supreme Court of the United States."[53] Thus, it is impossible that the Utah Supreme Court's ruling in this case "was contrary to, or involved an unreasonable application of" clearly established federal law--the essential statutory prerequisite for granting § 2254 relief.[54]

If no United States Supreme Court precedent "squarely addresses the issue," then the state disposition cannot be contrary to United States Supreme Court precedent.[55] "It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be 'diametrically different' and 'mutually opposed' to the Supreme Court decision itself."[56]

When he argued to the Utah courts, Petitioner was free to propose authority from any federal or state cases suggesting support for his positions. On federal habeas review, however, he may only prevail if he can show that, in ruling on his challenges, the State court decision was "contrary to, or involved an unreasonable application of, clearly established

---

[53] 28 U.S.C.A. § 2254(d)(1) (2011).

[54] *Id.*

[55] *Wright v. Van Patten*, 552 U.S. 120, 125 (2008); *Washington v. Crosby*, 324 F.3d 1263, 1265 (11th Cir. 2003).

[56] *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006) (citing *Williams v. Taylor*, 529 U.S. 362, 406 (2000)).

17

Federal law, as determined by the Supreme Court of the United States."[57] If no United States Supreme Court case exists squarely on point, Petitioner may not meet this standard and may not gain relief. That is just the case here.

Moreover, the Utah Supreme Court was right. Petitioner's mother was on the final UPA termination roll. So, she lost her Indian status, as did her progeny--i.e., Petitioner.[58] And, because Petitioner was not a tribal member, there was no need to officially terminate him.[59] Petitioner has cited no United States Supreme Court case in conflict with this statement, and the Court is aware of none. He thus has no ground for habeas relief.

### III. Claims for Declaratory Action and Injunctive Relief

Petitioner's claims under 28 U.S.C. §§ 1331, 2201, 2202, and 2283 (2011) are all inappropriately raised in this habeas petition. They are all really alternative ways to gain habeas relief as to arguments that have all proven invalid, as analyzed above. The relief requested under these statutes would all essentially lead to a habeas remedy, but would unfairly circumvent the habeas standard of review.

---

[57] 28 U.S.C.A. § 2254(d)(1) (2011).

[58] *Von Murdock*, 132 F.3d at 536.

[59] *Id.*

**CONCLUSION**

Two of Petitioner's challenges are procedurally barred and do not qualify for exceptional treatment. His remaining claims do not overcome the federal habeas standard of review.

**IT IS THEREFORE ORDERED** that this habeas corpus petition under § 2254 is **DENIED**. This case is **CLOSED**.

DATED this 28th day of March, 2011.

BY THE COURT:

_____
CHIEF JUDGE TED STEWART
United States District Judge